## Commonwealth v. Hinzy

*Dean A. Bowman,* for defendants.
*James B. Yelovich, District Attorney,* for Commonwealth.

COFFROTH, *P.J.*, April 30, 1981—This case is before the court en banc on defendants' post trial motions for new trial or arrest of judgment, filed following a nonjury verdict of guilty of summary offenses under Section 1207 as amended of The Game Law of June 3, 1937, P.L. 1225, as amended, 34 P.S. §1311.1207.

Defendants are husband and wife. District Game Protector Ronald J. Askey filed a criminal complaint against defendant husband for disorderly conduct a misdemeanor under Crimes Code, 18 Pa.C.S.A. §5503(a)(1) and (3), and issued a citation against him for interfering with an officer in performing his duty, for resisting inspection and arrest as a summary offense under section 1207 of The Game Law. Defendant wife was prosecuted by Deputy Game Protector Louis F. Fisher for simple assault a misdemeanor under Crimes Code, section 2701(a)(1), and for recklessly endangering another person a misdemeanor under Crimes Code, section 2705; and Game Protector Askey issued a citation against her for interference with an officer in the performance of duty a summary offense under The Game Law, section 1207. In a consolidated trial before a jury on the misdemeanors and a nonjury trial on the summary offenses before the trial judge (Coffroth, P.J.), the charge of recklessly endangering against defendant wife was dismissed by the court, defendants were found not guilty of the other misdemeanors by the jury, and defendants were found guilty by the trial Judge of the summary offenses but leave was granted defendants to file these post trial motions in order to raise for post verdict consideration by the court en banc the legal questions presented at trial by defense counsel. Compare Com. v. Shaffer, 31 Somerset 395, 410 (1976).

Section 1207 of the Game Law provides as follows:

"Any person who by force, menace, threat, or in any manner resists inspection or arrest for violation of any of the provisions of this act, or refuses to go with an officer after an arrest has been made, or interferes with any officer of the Commonwealth in the performance of his duty under the provisions of this act, shall, upon conviction, be sentenced to pay a fine of two hundred dollars and costs of prosecution, and, in default of the payment of such fine, shall be imprisoned one day for each dollar of fine."

As previously stated, defendant husband is charged under section 1207 with resisting arrest and inspection and for interfering with an officer in performance of duty, whereas defendant wife is charged only with the latter violation.

## FACTS AND TESTIMONY

Officers of the Pennsylvania Game Commission were on a mission in Lower Turkeyfoot Township, this County, to investigate beaver traps in the area of some beaver dams on the Youghiogheny River adjacent to land of the Pennsylvania Game Commission. To reach the game lands and the river, the officer drove on the unpaved road which passes by or through defendants' residence property, thence across the game lands to the river. Defendants have erected posts on their property on either side of the road with a cable across the road barring access to the game lands by that road, and a no-trespassing sign, claiming it as a private road. On the initial trip by the officers to the game lands, the road was not barred because the cable was down and the officers drove through but were seen by defendants' two sons aged 13 and 11 years; the boys told the officers

it was a private road, but after some conversation between the officers and the boys the officers disregarded the information and the no-trespassing sign and went on down the road. When the boys reported that this occurred, defendants called the police for assistance and were told to obtain the license number of the vehicle and the names of its occupants in order to prosecute them for trespassing before the district justice. Accordingly, defendants put up the cable and stationed their vehicle by it thereby blocking the road in order to ascertain who the travelers were when they returned.

On their return trip, the officers were unable to get out because of the barrier. No one was then present, defendants and their children being in their home some distance away. After blowing the horn and getting no response, the officers dismounted and walked toward defendants' house. There were three officers, of whom Mr. Askey was the leader. Mr. Askey testified that he saw defendant husband coming toward him at a brisk pace; "I asked him why the cable was up and he says: 'You're trespassing, besides you've abused my kids [referring to discussion between Mr. Askey and the boys when the officers met them on the way in]. I told him I did not abuse the kids. I told him that I wanted the cable down, that he was interfering with an officer in the performance of his duty. He said, 'You're not going any place, I called the state cops and I called John [Nicholson] the [Confluence Borough] cop.' . . . At this time I was in full uniform and I identified myself as a state game officer. . . . After I told him the second time to lower the gate, that it was going to be expensive, I told him I was going to charge him—when he refused the 2d time—charge him for interfering with an officer, and it would probably cost about $200. Then I asked

him for identification, and he said, 'I'm not giving you any identification, you're staying till the cops get here.'" Askey then stated: "I again asked him for identification, as I was placing him under arrest, he refused and turned to walk away. At this time I grabbed him around the top of the shoulders. . . ." Amidst some struggling, officer Fisher handcuffed him and officer Askey started with him toward their vehicle.

At that point, defendant wife came out of the house with a rifle, running toward the officers, a struggle ensued between the officers and defendant wife over the gun in which the officers obtained possession of it. Physical warfare between the officers and Mrs. Hinzy and the children followed, whose details need not be recounted here. Finally, the Hinzy vehicle was moved by defendant wife on her husband's instructions, and the officers left with defendant husband and these prosecutions resulted.

Officer Askey testified that his vehicle had Game Commission decals on the sides of its doors and that he was in uniform consisting of a small metal state emblem on the front of a black "fur trooper cap," a green uniform jacket with Game Commission shoulder patches, a state police style gun belt with revolver, and hip boots. He had a badge on his shirt which was concealed from view; there was no visible badge or name plate and he did not produce his badge to identify himself. Deputy Fisher had similar clothing but no emblem or patches and Deputy Tressler was not in any uniform. On cross-examination Mr. Askey stated that as he walked toward defendant husband, defendant could have seen the insignia on the hat, the belt buckle on the gun belt, and a little crest on his tie; Askey repeatedly stated that; "So far as I can recall, I iden-

tified myself as a state game officer," but he declined to be positive on that point.

In their testimony, the boys denied seeing any decal on the vehicle and saw no uniform when the vehicle first went down the road, and stated that they told their parents merely that a green car with some men in it went down the road.

Defendant husband testified that when the boys told him of the green car using the road and of the discussion the boys had with its occupants, he became angry and called the state police to report the trespass; they told him to contact the local police which he did by calling John Nicholson, police chief in Confluence, who said he could not act in the township and that defendants should get the names of the car's occupants and prosecute them before the district justice (corroborated at the trial by Nicholson). In order to learn identities, defendant then put up the cable and blocked the road with his vehicle. When he heard the other vehicle return, he went out toward it and saw a man coming toward him whom defendant did not know, who said: "Hinzy, you asshole, take this gate down and move the truck."[1] Defendant informed him he was trespassing, that he called the police and that "I'm supposed to get your name and license number. He [Askey] said: 'I want to see your identification.' I said, 'I ain't showing you nothing, I want to know who you are.' About that time I turned and he grabbed me in a headlock." Defendant also testified that Mr. Askey did not say that he was an officer, and that Askey was dressed in fishing boots, a green jacket and a black hat with "something on it. I

---

1. Mr. Askey testified that he addressed defendant as "Mr. Hinzy," and stated: " . . . I didn't call him an asshole till he took the key [to the officers' vehicle]."

couldn't tell if it was a golf club or what."[2] Defendant also stated that he was not told he was under arrest until after he was handcuffed.

## DISCUSSION

In the present case, defendant wife is charged with an interference with the officers' performance of duty based upon her efforts to block their vehicle from using the road and from leaving after her husband's arrest; defendant husband is charged with interference in blocking the road and refusing to unblock it and the citation against him also includes resisting inspection and arrest. Since only a single citation charging a single summary offense is filed against each defendant, we have no problem of multiplicity of charges.[3]

In 1937, when The Game Law was enacted, the common law on obstructing justice was apparently still in effect in Pennsylvania's general criminal law insofar as warrantless official action was concerned; then the Criminal Code of March 31, 1860, P.L. 382, as amended, prevailed. Section 8 of that statute was its only provision covering interferences with and resistances to performance of duty and dealt only with service and execution of pro-

---

2. The hat in evidence had a small state seal, silver looking, about an inch square, without any label or wording.

3. See: Com. v. Mitchell, 30 Somerset 340, 73 D. & C. 2d 472 (1975); compare: Com. v. Kelly, 487 Pa. 174, 409 A. 2d. 21 (1979); Com. v. Plybon, 279 Pa. Superior Ct. 329, 421 A. 2d 323 A. 2d 224 (1980); Com. v. Crockett, 229 Pa. Superior Ct. 80, 257 (1974); C.J.S., Obstructing Justice §7, at fn. 36.

cess and court orders.[4] In Com. v. Sheaffer, 11 D. & C. 552 (1928), the court held that section 8 of the 1860 Code applied only to cases of "written precept" (554), not to warrantless action, and that interference with and resistance to warrantless action was statutorily proscribed only in a few special instances such as The Game Law (554).[5] The implication of the decision is that the common law governed obstructions of an officer's warrantless action.[6]

Our criminal law was next codified in The Penal Code of June 24, 1939, P.L. 872, sec. 314, 18 P.S. §4214 (appendix), which governs interferences and resistances to official action, and extends to both written process and orders and to warrantless action; section 1101 of the Penal Code, 18 P.S.

---

4. Section 8 provides as follows: "If any person shall knowingly, wilfully and forcibly obstruct, resist or oppose any sheriff, coroner, other officer of the commonwealth, or other person duly authorized, in serving or attempting to serve or execute any process or order of any court, judge, justice or arbitrator, or any other legal process whatsoever, or shall assault or beat any sheriff, coroner, constable or other officer or person, duly authorized, in serving or executing any process or order as aforesaid, or for and because of having served or executed the same. . . . "

5. See also section 275 of The Fish Law of May 2, 1925, §275 repealed October 16, 1980, P.L. 996, sec. 2 P.L. 448, as amended, 30 P.S. §275, which provides as follows: "Any person who shall by threat, menace, or force, or in any manner attempt to deter or prevent any fish warden, or other person authorized to make arrests for violation of the fish laws, from enforcing or carrying into effect any provision of this act, or who shall resist the seizure of boats, devices, or nets illegally used, shall on conviction thereof, as provided in this chapter, be sentenced to pay a fine of one hundred dollars."

6. Section 178 of the 1860 Code provides that: "Every felony, misdemeanor or offence whatever, not specially provided for by this act, may and shall be punished as heretofore."

§5101, preserved common law crimes "not provided for by this act." See Com. v. Baltzley, 11 D. & C. 2d 235 (1957).[7]

Next came the current Crimes Code in 1972 (effective June 6, 1973); sections 5101 and 5104 relate to interferences and resistances to official action, and section 107(b) finally abolishes all common law crimes.[8]

The foregoing history will be of some aid in construing Game Law §1207 according to its legislative intent at the time of enactment, as we shall later mention.

---

7. The Penal Code §314, 18 P.S. §4314, provides as follows: "Whoever *knowingly, wilfully and forcibly obstructs, resists or opposes* any officer or other person duly authorized, in serving or attempting to serve or execute any legal process or order, or in making a *lawful arrest* without warrant, or assaults or beats any officer or person, duly authorized, in serving or executing any such legal process or order or for and because of having served or executed the same; or in making a lawful arrest without warrant; or rescues another in legal custody; or whoever being required by any officer, neglects or refuses to assist him in the execution of his office in any criminal case, or in the preservation of the peace, or in apprehending and securing any person for a breach of the peace, is guilty of a misdemeanor, and on conviction, shall be sentenced to imprisonment not exceeding one (1) year, or to pay a fine not exceeding five hundred dollars ($500), or both." (Emphasis supplied.)

8. Crimes Code §5101 provides as follows: "A person commits a misdemeanor of the second degree if he *intentionally obstructs, impairs or perverts* the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of *official duty*, or any other *unlawful act*, except that this section does not apply to flight by a person charged with crime: *refusal to submit to arrest*, failure to perform a *legal duty* other than an *official duty* or any other means of avoiding compliance with law without affirmative interference with governmental functions." (Emphasis supplied.)

Crimes Code §5104 provides as follows: "A person commits

## INTERFERENCE WITH DUTY

An officer employed by and representing the Pennsylvania Game Commission has only limited duty and authority: "To enforce all laws relating to game and other wild birds and wild animals. . . . " Game Law §214(a), 34 P.S. §1311.214(a); all powers of such officers are only those incidental to that primary enforcement duty, as set forth in Game Law §214(b) through (n), 34 P.S. §1311.214(b) through (n), and in sections 1204-1206 and 1208-1209, 34 P.S. §§1311.1204-.1206 and 1311.1208-.1209. They "shall be known as game protectors" and as "deputy game protectors." Game Law §§206 and 208, 34 P.S. §§1311.206 and .208. Game protectors are not and do not have the general law enforcement powers of a police officer or peace officer of the state or of a municipality or municipal subdivision. See Com. v. Mayhugh and Wedge, 75 D. & C. 2d 552, 32 Somerset 247 (1976).

In this case, defendants were not the focus of any investigation or inspection designed to protect any animals, birds or other game, nor did their conduct interfere with the making of any such investigation, inspection or protective effort by the officers; nor was defendants' property the subject of any such official action. The only conduct of defendants alleged to be unlawful interference was their action in barring the officers and their vehicle from the use of a road over or along defendants' land, alleged and believed by defendants to be a private

---

a misdemeanor of the second degree if, with the *intent of preventing a public servant* from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." (Emphasis supplied.)

.

road upon which the officers, on or off duty, were trespassers; and defendants acted without any demonstrated criminal intention or purpose of interfering with the officers' performance of their game duties. Under these circumstances, defendants' conviction of interfering with the officers' performance of duty under Game Law §1207, supra, cannot stand. It is incumbent upon the Commonwealth, in attempting to apply section 1207 merely to an interference with the officers' mobility, to prove that the interferor in so acting did so with guilty knowledge or wrongful intent to obstruct.[9]

Section 1207 does not expressly state that the proscribed interference with performance of duty must be purposeful or intentional, and it is therefore a question of interpreting the language of the statute to determine what the legislature's intention was in that regard when the statute was enacted. We stated the applicable principle in Com. v. Ewing, 10 D .& C. 3d 206, 208, 351, 352, 353, 36 Somerset 98, 100 (1979), as follows:

"The legislature may make an act criminal without regard to the intent or knowledge of the doer. Com. v. Black, 251 Pa. Superior Ct. 539, 380 A.2d 911 (1977). Whether the legislature has done that in a given case depends on what the particular

---

9. The fact that the officers were returning from instead of going to or being in the act of performing duty is irrelevant. To the officers, the return trip was as much a part of their official duty as was the actual inspection; getting there and getting home are as integral a part of performance of law enforcement duty as they are of the commission of crime. Compare: Com. v. Pastuch, 53 D. & C. 2d 630, 26 Somerset 245 (1971); Com. v. Lantzy, 37 Somerset 381, 389 (1979); Annotation, 44 A.L.R. 3d 1018.

statute says. If the statute states that violation must be knowingly or wilfully committed, or contains language to that effect, then the Commonwealth must prove such guilty knowledge in order to convict. Where, however, the statute is silent about such guilty knowledge, the statute must be read as a whole to see whether the legislature may have by implication intended to require proof of guilty knowledge even though it did not expressly say so. Thus, the issue is one of statutory interpretation. 22 C.J.S. 100, §30; [Criminal Law] 10 P.L.E. [Criminal Law] §22, 356."

In the criminal law, conduct is intentional when it is the actor's purpose to bring about a particular result or consequence; it is not sufficient that the conduct be intentional merely in the sense of being voluntary, or in the sense that it will produce known results as a by-product of the actor's primary purpose. As stated in Crimes Code §302(b)(1)(i), conduct is intentional in terms of a particular result when it is the actor's "conscious object . . . to cause such result." A specific intent to obstruct law enforcement is the mental state under consideration here.

In interpreting section 1207, we first note that the common law offense of obstructing justice, which included interfering with an officer's performance of duty, proscribed only intentional or wilful obstructions and interferences. See: C.J.S., Obstructing Justice §7a, Intent. As previously discussed, a wrongful interference with the performance of official duty also had to be intentional under Criminal Code of 1860, The Penal Code of 1939 and the Crimes Code of 1972 by express language. Thus, Game Law §1207 omitting such express language stands in contrast to those other

statutes in that respect. That fact can logically produce the conclusion that the difference in section 1207's language was intentional on the part of the legislature, and that any interference with an officer, whether accidental, inadvertent or negligent, was intended to be a crime for Game Law purposes, even though not accompanied by any wrongful intent on the part of the actor. See Com. v. Ewing, supra, 10 D. & C. 3d 211, 36 Somerset 102-103.

But there are other more powerful considerations which lead us to conclude that section 1207 must be construed as applying only to interferences which are made with the specific intention to obstruct performance of duty. First, the state's general interest in prohibiting obstructions of justice is essentially different from and of wider scope than its regulatory interest in the state's wild life; the former interest is significantly impaired only if the proscribed conduct is combined with elements of moral turpitude (malum in se), whereas many game regulatory violations such as illegal hunting or killing of game are essentially civil in character and are harmful to the state's interest in its wild life irrespective of wrongful purpose (malum prohibitum). See Ewing, supra, 10 D. & C. 3d 208, 36 Somerset 100-101 and 102. Moreover, the probabilities that regulatory wild life violations are innocent or faultless are far less than in interferences with performance of duty, particularly interferences with official mobility away from the site of game violations by persons not under investigation for such violation; subjective culpability is much more important to fairness in the latter cases. Moreover, it is not reasonable to require a higher standard of proof to show an unlawful interference with a police officer, than to show an unlawful interference with a game protector.

Fundamentally, common fairness requires that interference with officers under section 1207 be characterized as a criminal offense only if accompanied by some wrongful intent or purpose to subvert investigation and enforcement of game law violations. Otherwise section 1207 is of questionable validity. As we said in Ewing, supra, 10 D. & C. 3d 213, 36 Somerset 105:

"It should be recognized that while the state has the power to create *absolute criminal liability* irrespective of the subjective culpability or mental state of the actor, it does not have *absolute power* to do so. This legislative power, as all exercise of the police power, is subject to 'constitutional requirements' . . . Applying police power regulations within reason means by due process of law, that is, within the limits of customary notions of fundamental fairness." (Emphasis in original.)

The decision in Com. v. Rhone, 174 Pa. Superior Ct. 166, 100 A. 2d 147 (1953), is consistent with our view. In that case, the court held that an unlawful interference need not be "by force, menace, threat" as stated in section 1207, because that language is followed by the phrase "or in any manner"; but the court in upholding a conviction of interference with duty which did not involve "force, menace, threat" pointed out that defendant's conduct was a "wilful" interference with an inspection of a vehicle for a game violation (170). Moreover, the very words "interferes" and "resists" are strongly suggestive of conduct which is intended to interfere with the performance of duty.

Consequently, unlawful interference with duty under section 1207 of The Game Law requires proof that the accused has interfered in some manner

with the officer's performance of duty with the specific purpose of impeding, hindering or preventing the performance of the duty, and not for some other purpose. That proof is missing here. All of the evidence, direct and circumstantial, clearly points to the conclusion that the primary and only purpose of defendants' interference with the passage of the officers over the road in question was the protection of their private property from unlawful invasion by the officers. Accordingly, the Commonwealth has failed to produce sufficient evidence of wrongful purpose, an essential element of the crime charged.

There is further reason why this conviction for interference with duty cannot stand, in light of the fact that the particular purpose which defendants' conduct was designed to accomplish raises the issue of legal justification. Whenever there is evidence at trial from whatever source that the accused's conduct may have been legally justified, the Commonwealth has the burden of proving beyond a reasonable doubt that the conduct was legally unjustified: Com. v. Cropper, 463 Pa. 529, 537-8, 345 A. 2d 645 (1975). Legal justification is a complete defense to an accusation of crime: Com. v. Whaley (No. 2), 37 Somerset 255, 260 (1979); Crimes Codes §502. Defendant is not required to prove that his conduct was justified; it is the burden of the Commonwealth to prove that the conduct was unjustified, once the issue of justification legitimately arises in the case. See: Com. v. Hinchcliffe, 479 Pa. 551, 388 A. 2d 1068 (1978); Com. v. Lynch, 477 Pa. 390, 383 A. 2d 1263 (1978); Com. v. Hilbert, 476 Pa. 288, 382 A. 2d (1978); Com. v. Lesher, 473 Pa. 141, 373 A. 2d 1088 (1977); Com. v. Cropper, supra; Com. v. Whaley (No. 2), supra, 275-6 Appendix note [3]; Pennsylvania

Suggested Standard Criminal Jury Instruction 9.507A (April 1976 Revision).[10]

The right of a property owner to use force for the protection of his land from trespassory invasion is governed by Crimes Code section 507(a)(1), which provides as follows:

"(a) Use of force justifiable for protection of property.—The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary: (1) to prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible movable property, if such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts". . . .

From this language it is apparent that justification for the use of reasonable force "to prevent or terminate an unlawful entry or other trespass upon land . . . believed by the actor to be in his possession

---

10. As the cited cases show, although there is some difference of opinion among the Pennsylvania Supreme Court Justices, there are two distinct rationales for the rule placing on the Commonwealth the burden of proving nonjustification; (1) the Crimes Code does not expressly assign the burden of proof on justification, whereas it does expressly assign to defendant the burden on certain other defensive matters, hence the legislative intent was to place the burden of the Commonwealth, see particularly Com. v. Cropper, supra; and (2) where the justification negates an element of the crime, it is unconstitutional to place the burden of proving justification on defendant, see also: Mullaney v. Wilbur, 44 L.Ed. 2d 508 (1975), Hankerson v. North Carolina, 53 L.Ed. 2d 306 (1977), and Patterson v. New York, 53 L.Ed. 2d 281 (1977). Since the first rationale is clearly applicable to the instant case, it is not necessary to decide whether the second also might apply (although justification appears to negative intent in this case).

or in the possession of another for whose protection he acts" does not depend upon proof that the accused's legal right in the land was being invaded or that the intruder was legally trespassing, but merely that the accused so *believes*; under the definition in Crimes Code section 501, the term "believes" means "reasonably believes," see Com. v. Bamber, 463 Pa. 216, 222, 344 A. 2d 799 (1975), appeal from this court; and under the definition in Crimes Code section 103, a belief is reasonable when "the actor is not reckless or negligent in holding" it. Thus our duty here is not to decide the actual legal title or rights to the use or possession of the road, as would be done in a civil action to try the title to land; we are concerned here only with those aspects of the legal title which are relevant on the question of the existence and reasonableness of defendants' belief that they were rightfully in possession of the land to the exclusion of the Commonwealth and its officers. Otherwise stated, the evidence here must be sufficient to warrant a finding beyond a reasonable doubt either that defendants, in barring the road, did not believe they were in rightful and exclusive possession of the road, or that their belief in such possession was recklessly or negligently held.

It must be remembered that, in law, a trespass to land is entry upon another's *possession*, not necessarily his title: C.J.S., Trespass §12; Restatement, 2d, Torts, Scope Note of Topic preceding §157. And in the criminal law, mental states of belief, purpose and intention of the accused generally take primacy over actualities. As stated in Model Penal Code Comment, Tentative Draft No. 8, §507(a)(1), reported in Toll, Pennsylvania Crimes Code Annotated §507, 185 (Lawyers Co-op 1974) under heading "[507(a)(1)]":

"As a general rule . . . [subsection (a)(1) of Crimes Code §507] limits the privilege of defense to cases where the other party is acting unlawfully, whether under a claim of right or not. Defense may be made, however, against one who is acting lawfully, if the defender believes that the other party is acting unlawfully . . . If rights of self-defense are given at all, they must generally be accorded to persons who honestly believe they have right on their side. The minutiae of property rights ought not, so far as possible be settled by criminal prosecution."

Here, the Commonwealth has completely failed to establish nonjustification, that is, that defendants did not believe they were lawfully in possession and that the officers were trespassing, or that their belief to that effect was recklessly or negligently held. On the contrary, defendants produced their deed which expressly grants them use of the road, which gave them reasonable ground for belief in their right to treat the officers as trespassers, and all of the actions and declarations of defendants at the time were clearly directed to asserting that belief. Moreover, the Commonwealth was unable to produce any grant of a right-of-way over the road, or to show any knowledge on the part of defendants of such a right-of-way. Under these circumstances the officers even though acting in good faith had no right to press their demand to enter the property which defendants claimed was private, in view of the fact that neither defendants nor their property were the focus of any investigation or inspection for a game law violation. If the officers had any evidence of their legal right to use the road, it was their duty to present it to defendants in an effort to persuade rather than to force entry. Consequently, no

matter how a civil suit to determine the legal title and rights to use the road might turn out, defendants have no criminal liability for preventing the officers' entry under the clear circumstances of this case even if we assume that defendants knew the invaders were officers and were on duty.

Although we have stated that the actual legal right of the Commonwealth officers to use the road is not in issue except as defendants' belief might be affected, we think we should comment on those rights in a situation such as this in view of the fact that the officers' insistence on using the road, though undertaken in good faith, was improper. In our society, which values private property and privacy at least as high as, and in some cases higher than, police powers to enforce law, law enforcement officers have no general right to commandeer the use of private land even though desirable or even necessary in performance of their duty. Americans are extremely sensitive to such invasion, and those feelings must be respected by those in authority who are sworn to uphold the law. The law recognizes that unconsented invasions of private property are proper in limited circumstances, and has created privileges of entry upon land in those situations, but none of them goes so far as to allow carte blanche entry to law enforcement officers. Thus, unconsented entry upon private property is privileged when made pursuant to lawful or apparently lawful military order Restatement, 2d, Torts, § 146, or when necessary to avert an imminent public disaster, Id. § 196, or when necessary to prevent serious harm, Id. § 197, or to reclaim one's goods, Id. § § 198-200, or to abate a public or private nuisance, Id. § § 201-203, or to make an arrest for a criminal offense, Id. § 204, or to recapture an arres-

tee or to prevent crime, Id. §§205-207, or to execute civil process, Id. §§208-209, or under a court order, Id. §210. None of those privileges is applicable here; as respects the privilege to enter to make an arrest, we shall deal with that in our subsequent discussion of the charge of resisting arrest.

Before leaving this subject, we should also note and comment on section 214(a) of The Game Law, 34 P.S. §1311.214(a), which provides as follows:

"Each member of the commission, the director, and each of its lawfully qualified representatives shall have the power: (a) To enforce all laws relating to game and other wild birds and wild animals, and to go upon any property outside of buildings, posted or otherwise, in the performance of his duty." There are several reasons why this statute cannot be invoked to sustain these criminal prosecutions:

(1) Consistent with our previous discussions in this opinion, we construe section 214(a) as granting a privilege of entry by a game protector upon private property in performance of duty only when he has reasonable cause to inspect or investigate whether the "laws relating to game and other wild birds and wild animals" are being properly enforced on the property in question or against a person or persons on the property, or when a specific power granted in other subparagraphs of section 214 is to be exercised on the property entered.

(2) Assuming for purposes of discussion that section 214(a) were to be interpreted as allowing entry upon land not involved in investigation or inspection of game law violations or enforcement under that law, the section would have to be construed as doing so only when such entry is "reasonably

necessary." Restatement, 2d, Torts, §211.[11] Here there was no such necessity because there was other access to the beaver traps by a public road, although a longer and less convenient trip. Also, "the privilege must in all other particulars be exercised in a reasonable manner." Id. §211, Comment g. We construe that as requiring that the owner's consent first be sought absent emergency or exigent circumstances.[12]

There are very few authorities construing Game Law section 1207, and none has been found or submitted which deals with a case like or nearly like this one. The attorney for the Commonwealth has cited to us a number of cases, reported and unreported, as supporting these prosecutions. In examining those cases we find that all of them deal with resistances to game officers by persons and property under direct investigation for game law violations or suspected violations. For that reason, we have no quarrel with those decisions. That vital

---

11. §211. Entry Pursuant to Legislative Duty or Authority

"A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is *reasonably necessary* to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled." (Emphasis supplied.)

12. The Fourth Amendment warrant requirement is inapplicable in a situation which involves entry only upon open land not "persons, houses [and curtilage], papers and effects." See 33 P.L.E., Search and Seizure §1 fn. 1; C.J.S., Search and Seizure §§13 and 14; Air Pollution Variance Board v. Western Alfalfa, 40 L.Ed. 2d 607 (1974). On game inspections as administrative searches, see: Gonzalez v. State, 388 S.W. 3d 355 (Texas 1979); Long v. State, 532 S.W. 2d 591 (Texas 1975); Ringel, Searches and Seizures, Arrests and Confessions (2d Ed. 1980, Clark Boardman Company)§14.4(d); compare Com. v. Maras, 37 Somerset 334 (1979).

distinction between those cases and this one makes them not only inapposite, but virtually supportive of our decision in this case.

For example, in Com. v. Meyers, no. 78 Criminal 1974 (Juvenile Division Franklin County), game protectors drove their vehicle to and upon private property, having seen parked in the driveway the vehicle of one Stoner which they suspected of containing illegal game. The officers knocked at the door at the dwelling house, asked for Stoner who them came, and requested Stoner for permission to search his vehicle, to which Stoner agreed. Respondent juvenile having observed this drove the family vehicle into a blocking position behind the officers' vehicle and, after the inspection of the Stoner vehicle was completed, refused to remove the barrier; the juvenile had previously been given instructions by his father to block game wardens if they came on the property and to keep them there until the father had an opportunity to talk with them. The officers also asked the boy's grandfather to move the block; he refused but offered to try to locate the father. The game officers then called the state police for assistance. Soon the father arrived, was advised of the situation and that the officers had no search warrant and that the juvenile was not under arrest, communicated with his attorney by telephone, and then unblocked the officers' vehicle. The juvenile was prosecuted for interference under section 1207. Judge Keller found respondent guilty in juvenile court, and stated that it was the father who was more culpable and should have been prosecuted. Clearly, all of the officers' conduct in the Myers case was proper and both the father and son violated section 1207, because the officers were lawfully investigating a suspected game violation involving a person and a vehicle on the pri-

vate property which they entered, and the wrongful intent of the obstruction was clear. Had that been the case here, we would readily sustain these convictions. See also: Com. v. Rhone, supra; Com. v. Hansen, 57 D. & C. 2d 513 (1972); Com. v. Butler, 40 D. & C. 358 (1940); Com. v. Petrini, no. 47 October Term 1977 (Clinton County, Brown, P.J.).

For the reasons stated, judgment must be arrested as a matter of law on the conviction of defendants for interference with performance of duty under Game Law section 1207.

## RESISTING ARREST

Only defendant husband was convicted of resisting arrest and only he was charged with that offense. This charge does not deal with his conduct in blocking the road and in refusing to open it, but with his conduct in walking away from the officer when told he was under arrest (according to the officer) and for physically struggling against the officer's efforts to obtain physical control over him and refusing to go with the officer after being placed under arrest.

In view of the fact that defendant was not guilty of the crime for which he was arrested, the defense contends that he is not guilty of resisting arrest. The implications of this argument are that: (1) where a person is arrested for crime but is not guilty of that crime, the arrest is unlawful, and (2) where an arrest for a crime is unlawful the person arrested cannot be found guilty of resisting arrest. We cannot affirm the former proposition but we agree that under the circumstances of this case the arrest was unlawful and the conviction of resisting arrest under Game Law section 1207 cannot stand.

Merely because a person arrested for crime is

ultimately found not guilty thereof does not itself make the arrest unlawful. An arrest is lawful when a person making it has (1) the legal power of arrest and (2) probable cause to believe that the person arrested committed the crime for which the arrest is made. Probable cause for arrest does not require legally competent evidence which is needed to convict in a trial, see Com. ex rel. Johnston v. Walker, 25 Somerset 70, 77, 78 (1970), nor need it show guilt beyond a reasonable doubt as must be produced at trial, see Com. v. Mains, 31 Somerset 5, 16 (1976), but the information available to an arresting officer must have or approach a more-likely-than-not probability of guilt in order to validate the arrest: Com. v. Mains, supra, 16.

In this case, we assume the game protector's power to make a warrantless arrest on probable cause for an intentional interference with performance of duty and for resisting arrest or inspection under Game Law section 1207. See Game Law §§214(f) and 1204, 34 P.S. §§1311.214(f) and .1204. But the officer clearly lacked any cause to believe that defendants' interference with the officers' mobility over the private road and the resultant interference with the completion of their inspection duty elsewhere was undertaken with the purpose and intention of prevention or interfering with the performance of the duty. When the officers found the gate or cable closed to them and the way barred by defendants' vehicle, they of course had the right at that point of dismounting and entering defendants' property on foot, not to arrest, but to make investigative inquiry into the facts to determine whether there was probable cause to believe that defendants' purpose was wrongful. See Com. v. Mains, supra, 16-17, 22. When it immediately became clear from defendant husband's state-

ments that he was acting under claim of right in protection of his property from invasion, some further probing into intention became necessary before any arrest could lawfully be made; instead, the arrest was made without further inquiry and without establishing the necessary probable cause to believe that defendants were acting wrongfully. The arrest was then unlawful.[13]

---

13. The district attorney cites P.L.E., Trespass §38, and C.J.S.,Trespass §§54-55, to the effect that an officer may enter private property to serve process; but that refers to process or court order in written form, a "written precept," not warrantless action. See Com. v. Sheaffer, supra, 554. Under Restatement, 2d Torts, §204, entry upon land "to make an arrest for a criminal offense" of a person reasonably believed to be there, is privileged; but the privilege of entry exists only if the arrest is lawful; as stated in Comment g to section 204: "Since the privilege stated in this section is ancillary to the privilege to make an arrest, it cannot exist unless the arrest made or sought to be made is itself privileged." Compare id. §206, placing additional restrictions upon the privilege when entering a dwelling to make an arrest.

Crimes Code §505(b)(1)(ii) is also worth noting in this connection; it provides that the use of force is not justifiable "(ii) to resist force used by the occupier or possessor of property or by another person on his behalf, where the actor knows that the person using the force is doing so under a claim of right to protect the property, except that this limitation shall not apply if: "(A) the actor is a public officer acting in the performance of his duties or a person lawfully assisting him therein or a person making or assisting in a lawful arrest."

Thus, the officer's use of force to resist defendants in protecting their property from invasion is permitted only when the officer is making a "lawful arrest"; this section, like section 505(b)(1)(i) subjects the actor (officer) to potential assault liability if the arrest is unlawful. This section (ii) also applies whether the defensive action resisted by the officer is aimed at the officer's attempted entry or at another's attempted entry in aid of which the officer's force is used. Apparently this section is intended merely to deal with the officer's assault liability, and not to modify defendant's assault liability under section 505(b)(1)(i), infra, by limiting the latter to cases of lawful arrest.

Game Law section 1207 makes it a summary offense to resist "arrest" for violation or to refuse to go with an officer after an "arrest" has been made. Although the statute does not expressly state that the arrest must be lawful, we so construe it.

Whenever the word "arrest" is used in a statute, its meaning depends upon the legislative intention; it may mean a lawful arrest for crime, or a lawful detention for investigative purposes, or it may refer merely to the physical fact of personal seizure whether or not the requirements of a lawful arrest or detention are present: Com. v. Caton, 34 Somerset 333, 338 (1977). There are several reasons why Game Law section 1207 means "lawful arrest":

(1) While in common speech any seizure, lawful or unlawful, of a person by an officer in order to prosecute for crime is an arrest, and the same looseness of speech is sometimes found in judicial

---

Section 505 (b)(1)(ii), supra, is intended to resolve in favor of a land owner exercising his right to terminate or prevent trespass on his land (even by a public officer) any conflict between that right and the officer's right to enter to make an arrest, unless the arrest is lawful; as Model Penal Code Comment (Temporary Draft No. 8 page 19) set out in Toll, supra, §505, page 166, states:

"It is obviously desirable to reduce so far as possible the situation in which there may be conflicting claims to use force, each of which might otherwise be justifiable or excusable on different grounds. The . . . [Subsection] accordingly is addressed to the most important situation where a conflict of this sort is likely to arise. Here a choice must be made and it is made in favor of the occupier even though his challenger is right; the challenger is forced to go to court.

"Three exceptions are however, made to this solution: (1) the case where the actor is a public officer acting in the performance of his duties or a person lawfully assisting him therein or making or assisting in a lawful arrest; . . . "

Compare with the action taken here the action taken by the game protectors in Com. v. Myers, supra, where, when prevented from leaving, they called for police assistance.

opinions, strictly speaking an unlawful seizure to prosecute for crime is an actionable trespass and only a lawful seizure for that purpose is, strictly speaking, an "arrest" in legal parlance. As stated in 6 A C.J.S., Arrest §2: "The term arrest has a technical meaning, applicable in legal proceedings. It implies that a person is thereby restrained of his liberty by some official or agent of the law, armed with lawful process [or authority], authorizing and requiring the arrest to be made." As a general rule of statutory construction, the prima facie meaning of the term "arrest" is "lawful arrest" unless there is some indication in the language or purpose of the legislation that a different meaning was intended.

(2) While it is true that the legislature could well have used the phrase "lawful arrest" were that the intended meaning, see Glass v. Com., 460 Pa. 362, 367, 333 A. 2d 768 (1975), it does not follow necessarily that the term "arrest" standing alone does not or cannot mean "lawful arrest." Throughout The Game Law, the word "arrest" is used without the adjective lawful, see sections 214(f), (l) and (m), 1202, 1204 and 1205. It would be unreasonable to suppose that the word "arrest" in those sections includes unlawful physical seizures without probable cause; it is equally unreasonable to suppose that the word "arrest" in section 1207 is intended to mean anything different than the same word as used throughout the statute, absent some contextual indication to the contrary; an "arrest" under the act means a lawful arrest with probable cause to support it. Compare Glass v. Com., supra, in which the court reasoned that where a civil statute used the phrase "arrest" on "'reasonable grounds to believe the person to have been driving under the influence of intoxicating liquor,'" a lawful arrest (which would require such reasonable

cause without specific mention) was not intended because the reasonable cause phrase would otherwise be redundant.

(3) Historically in Pennsylvania, prior to enactment of the Crimes Code in 1972, it was not unlawful to resist an unlawful arrest. See Com. v. Supertzi, 235 Pa. Superior Ct. 95, 98, 340 A. 2d 574 (1975). The right to use non-deadly force in self-defense against an unlawful confinement is recognized in Restatement, 2d, Torts, §68. See also 6A C.J.S., Arrest §49 at fns. 8-11. At common law, an unlawful arrest may be resisted: 67 C.J.S., Obstructing Justice §14. Consequently, all of Pennsylvania's criminal statutes on resisting arrest, prior to the Crimes Code, made the offense expressly applicable only to lawful arrests. See: The Penal Code of 1939, §314, as amended, 18 P.S. Appendix §4314, supra. The Game Law was enacted in 1937, and the most probable legislative intention was that it be consistent with then existing law on the subject, and not to enact a radical change in the law merely by omission of the adjective "lawful" and without clear and express language effecting the change. Compare discussion of omission of language requiring specific intent.

(4) The Crimes Code makes a significant change in the law in section 505(b)(1)(i), which provides as follows: "(b) Limitations on justifying necessity for use of force.— (1) The use of force is not justifiable under this section: (i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful. . . ."[14] Neverthe-

14. In the instant case, there is a complete absence of testimony that defendants knew the vehicle which used the road initially, which the defendants' sons described merely as a "green car," was a game commission vehicle; whether or not

less, the Crimes Code in section 5104 (resisting arrest or other law enforcement) set out in footnote 8, supra, makes it an offense to resist only a "lawful arrest." There is some question about the meaning of this change in the law. In Jarvis, Pennsylvania Crimes Code and Criminal Law (Bisel 1974) section 505 page 7, the author states:

"Paragraph (b)(1)(i) changes the law in that it is considered not justified to resist an arrest even though the arrest is unlawful.

"Unfortunately, the legislature was inconsistent and made §2702 (aggravated assault), (a)(2) and

---

the boys actually saw the game commission decal on the vehicle as the officers stated (denied by the boys) is beside the point; defendants and their sons testified that no such information was given to the parents and the Commonwealth produced no evidence to the contrary. As to whether defendants knew that the men were peace officers when they returned and came upon defendants' property is sharply disputed in the evidence; if we were forced to evaluate the sufficiency of the Commonwealth's evidence on the point, we would be compelled to conclude that there is insufficient evidence of such actual knowledge in view of these facts: (1) the arresting officer's testimony is not positive that he identified himself as a game protector, (2) his badge was not visible nor was it produced, (3) his uniform at the time displayed no clearly visible or legible name or official title, and (4) the jury in the case apparently concluded that defendants did not know that the men were peace officers in acquitting defendants of the misdemeanors in respect of which the jury was fully instructed as to the essentiality of such knowedge under Crimes Code section 505 (b)(1)(i), supra. On the importance of displaying the badge and being in proper uniform, see Com. v. Savage, 17 D. & C. 2d 697 (1959), and Com. v. Mayhugh and Wedge, 75 D. & C. 2d 552, 555, 32 Somerset 247, 249 (1976). Since in our view of the case the question of defendants' knowledge that the officers were peace officers is not crucial, we shall assume such knowledge.

(a)(3), dependent upon the policeman making a 'lawful arrest'; and §5104 (resisting arrest or other law enforcement) as a crime dependent upon effecting a 'lawful arrest.' See comments to those sections.

"It is believed that this is a good section, as a police officer should be obeyed, and the illegality of the action can be determined more appropriately in a court of law than by a fight, which will probably create further disturbance."

The comment to the corresponding section of the Model Penal Code (Tentative Draft No. 8) reprinted in Toll, Pennsylvania Crimes Code Annotated, §505, 165, (Bisel 1974), acknowledges that Restatement, 2d, Torts, §68, grants the privilege of resisting "confinement" by moderate force, but pleads for Code section 505(b)(1)(i) as the better rule. Dictum in Com. v. Supertzi, supra, is in accord. But the Reporter's Comment to Code section 5104 set out in Toll, supra, at page 585, resolves the apparent conflict as follows: "This section [5104] by its express terms relates only to 'lawful' arrests. However, under §505(b)(1)(i) force is not justified to resist an unlawful arrest. Thus, resisting an unlawful arrest may be assault."

In that view, which we adopt, while the code changes prior law to make it unlawful to use force to protect oneself from unlawful arrest, the criminal sanction for such unlawful force is under the assault sections of the code, and the change does not and was not intended to subject the actor to criminal liability for the offense of resisting an unlawful arrest; we construe Game Law section 1207 in the same manner. Consequently, if defendant husband is to be prosecuted for any offense arising

from his resistance to arrest, it must be for an assault or some other crime, see Code § § 2701-2705.[15]

(5) At common law, the offense of resisting arrest (and the offense of interference with the performance of official duty) existed only if the arrest and the duty interfered with were lawful. See: 67 C.J.S., Obstructing Justice § 14, unlawful arrest; Id. § 7 page 128, interference with performance of official duty. This right of resistance applied at common law to an arrest in which the illegality is attributable to lack of probable cause. Id. § 14 at note 49.

(6) Finally, Game Law section 1207 must be strictly construed in favor of the accused. Section 1928(b) of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(b), expressly states that all penal provisions of statutes "shall be strictly construed"; the rule is doubly applicable to summary offenses in which the right to trial by jury is denied: Com. v. Cook, 226 Pa. Superior Ct. 273, 278, 308 A. 2d 151 (1973); 10 P.L.E., Criminal Law § 191.[16]

---

15. The resistance offered by defendant to his "arrest" was not sufficiently serious to constitute a simple assault under Code § 2701. The fact that our conclusion produces the result that defendant is not guilty for his resistance is consistent with the trend in the criminal law of both assault (Code § 2701) and resisting arrest (Code § 5104) to make such criminal sanctions inapplicable for minor and technical resistances and to apply them only to more substantial invasions involving bodily injury in some form, not to merely offensive reactions. See Com. v. Rainey, 286 Pa. Superior Ct. 75, 426 A. 2d 1148 (1981).

Defendant wife was charged with assault upon an officer, a misdemeanor, of which she was acquitted by the jury. As to potential assault liability of an officer for unlawful arrest, see footnote [13], supra.

16. According to the comment by the Joint State Government Commission, Crimes Code section 105 abolishes the rule of strict construction for the Crimes Code and substitutes a rule of "reasonable construction." See Toll, supra, section 105, and Reporter's Comment thereto.

For the foregoing reasons, judgment must be arrested as a matter of law on the conviction for resisting arrest.[17]

## CONCLUSION

Since the resolution of this case turns on a proper interpretation of Game Law section 1207, 34 P.S. § 1207, which may be important in future controversies, we think it well to make the following summarization of the way in which the section should be read (bracketed words added):

"Any person who [with intent to obstruct law enforcement], by force, menace, threat or in any manner resists [lawful] inspection or [lawful] arrest for violation of any of the provisions of this act, or refuses to go with an officer after an [lawful] arrest has been made, or interferes with any officer of the Commonwealth in the performance of his [lawful] duty under the provisions of this act, shall, upon conviction, be sentenced . . ."

Finally, as stated at the trial, we are anxious that no further violent conflict occur between the parties over the respective property rights of the Commonwealth and defendants to use the road in question. Therefore, the legal aspects of those property rights raised in this case should be resolved either by agreement or by civil litigation before any further attempt is made by the Commonwealth to force use of the road.

---

17. It is for the trial judge, not the jury, to determine whether an arrest is lawful: Com. v. Franklin, 248 Pa. Superior Ct. 145, 374 A. 2d 1360 (1977); Com. v. Bartman, 240 Pa. Superior Ct. 495, 367 A. 2d 1121 (1976); Com. v. Caton, 32 Somerset 142, 145 (Editor's Note) (1974); Com. v. Raynes, 6 D. & C. 3d 315 (1978).

## ORDER

Now, April 30, 1981, defendants' motion for new trial is denied, their motion in arrest of judgment is granted and they are discharged. Costs on the County.